# EXHIBIT A

EFiled: Jun 04 2019 02:30PM EDT
Transaction ID 63322064
Case No. N19C-06-027 VLM

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMY L. SIMPLER, HANK SMITH, and DAVID C. DELPERCIO, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) ) | |
| HSBC NORTH AMERICA, HOLDINGS INC, a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

## ALIAS SUMMONS

**THE STATE OF DELAWARE,**

**TO THE NEW CASTLE COUNTY SHERIFF,**

**YOU ARE COMMANDED:**

To summon defendant HSBC North America Holdings Inc., so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon David B. Anthony, Esquire or Brian M. Gottesman, Esquire, Plaintiffs' attorneys, whose address is Berger Harris LLP, 1105 N. Market Street, 11th Floor, Wilmington, Delaware 19801, an answer to the complaint.

To serve upon defendant HSBC North America Holdings Inc., a copy hereof and of the Complaint.

Dated: 7.19.19

_Kenneth P. Creedon_
**Prothonotary**



**Per Deputy**

## TO THE ABOVE NAMED DEFENDANT:

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

**Prothonotary**

**Per Deputy**

**SUPERIOR COURT**  EFiled: Jun 04 2019 02:30PM EDT
**CIVIL CASE INFORMATION STATEMENT (CIS)** Transaction ID 63322064
Case No. N19C-06-027 VLM

COUNTY:   (N)   K   S          CIVIL ACTION NUMBER:_____

| | |
|---|---|
| **Caption:**<br><br>Amy L. Simpler, Hank Smith, and<br><br>David C. DelPercio,<br><br>Plaintiffs,<br><br>v.<br><br>HSBC North America Holdings Inc.,<br><br>a Delaware corporation,<br><br>Defendant. | **Civil Case Code:**  CMIS<br><br>**Civil Case Type:**  Civil/Miscellaneous<br>(SEE REVERSE SIDE FOR CODE AND TYPE)<br><br>MANDATORY NON-BINDING ARBITRATION (MNA) _____<br><br>Name and Status of Party filing document:<br><br>Amy L. Simpler, Hank Smith, David C. DelPercio (Plaintiffs)<br><br>Document Type: (E.G.; COMPLAINT; ANSWER WITH COUNTERCLAIM)<br><br>Complaint<br><br>JURY DEMAND:  YES  X   NO ____ |
| **ATTORNEY NAME(S):** Brian M. Gottesman<br>David B. Anthony<br>Peter C. McGivney<br>**ATTORNEY ID(S):**  4404<br>5452<br>5779<br>**FIRM NAME:**<br>Berger Harris LLP<br><br>**ADDRESS:**<br>1105 N. Market Street, 11th Floor<br><br>Wilmington, Delaware 19801<br><br>**TELEPHONE NUMBER:**<br>302-655-1140<br><br>**FAX NUMBER:**<br>302-655-1131<br><br>**E-MAIL ADDRESS:** bgottesman@bergerharris.com<br>danthony@bergerharris.com<br>pmcgivney@bergerharris.com | IDENTIFY ANY RELATED CASES NOW PENDING IN THE SUPERIOR COURT OR ANY RELATED CASES THAT HAVE BEEN CLOSED IN THIS COURT WITHIN THE LAST TWO YEARS BY CAPTION AND CIVIL ACTION NUMBER INCLUDING JUDGE'S INITIALS:<br><br>None.<br><br>EXPLAIN THE RELATIONSHIP(S):<br><br>None.<br><br>OTHER UNUSUAL ISSUES THAT AFFECT CASE MANAGEMENT:<br><br>None.<br><br>(IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH PAGE) |

**THE PROTHONOTARY WILL NOT PROCESS THE COMPLAINT, ANSWER, OR FIRST RESPONSIVE PLEADING IN THIS MATTER FOR SERVICE UNTIL THE CASE INFORMATION STATEMENT (CIS) IS FILED. THE FAILURE TO FILE THE CIS AND HAVE THE PLEADING PROCESSED FOR SERVICE MAY RESULT IN THE DISMISSAL OF THE COMPLAINT OR MAY RESULT IN THE ANSWER OR FIRST RESPONSIVE PLEADING BEING STRICKEN.**

Revised 01/2019

EFiled: Jun 04 2019 02:30PM EDT
Transaction ID 63322064
Case No. N19C-06-027 VLM

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| AMY L. SIMPLER, HANK SMITH, and DAVID C. DELPERCIO, ) ) ) ) | |
| Plaintiffs, ) | C.A. No. _____ |
| ) | |
| v. ) | |
| ) | |
| HSBC NORTH AMERICA HOLDINGS INC, a Delaware corporation, ) ) ) | |
| ) | |
| Defendant. ) | |

### SUMMONS

**THE STATE OF DELAWARE,**

**TO THE NEW CASTLE COUNTY SHERIFF,**

**YOU ARE COMMANDED:**

To summon defendant HSBC North America Holdings Inc., so that, within 20 days after service hereof upon defendant, exclusive of the day of service, defendant shall serve upon David B. Anthony, Esquire or Brian M. Gottesman, Esquire, Plaintiffs' attorneys, whose address is Berger Harris LLP, 1105 N. Market Street, 11th Floor, Wilmington, Delaware 19801, an answer to the complaint.

To serve upon defendant HSBC North America Holdings Inc., a copy hereof and of the Complaint.

Dated: _____          **SUSAN A. HEARN**
                                  **Prothonotary**

_____
**Per Deputy**

**TO THE ABOVE NAMED DEFENDANT:**

In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on Plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

**SUSAN A. HEARN**
**Prothonotary**

_____
**Per Deputy**

EFiled: Jun 04 2019 02:30PM EDT
Transaction ID 63322064
Case No. N19C-06-027 VLM

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AMY L. SIMPLER, HANK SMITH, and DAVID C. DELPERCIO, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) | |
| HSBC NORTH AMERICA HOLDINGS INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

### PRAECIPE

To:  Prothonotary
      New Castle County Courthouse
      500 N. King Street
      Wilmington, DE 19801

PLEASE ISSUE SUMMONS to the New Castle County Sheriff, to serve a

copy of the summons and complaint upon defendant HSBC North America Holdings

Inc. pursuant to Superior Court Civil Rule 4 and 10 *Del.C.* §3111 at the address

below:

HSBC North America Holdings Inc.
300 Delaware Ave #1400
Wilmington, DE 19801

**BERGER HARRIS LLP**

By: */s/  David B. Anthony*
    Brian M. Gottesman, Esq. (DE ID No. 4404)
    David B. Anthony, Esq. (DE ID No. 5452)
    Peter C. McGivney, Esq. (DE ID No. 5779)
    1105 N. Market Street, Ste 1100
    Wilmington, DE 19801
    (302) 655-1140  telephone
    (302) 655-1131  fax
    bgottesman@bergerharris.com
    danthony@bergerharris.com
    pmcgivney@bergerharris.com

    *Attorneys for Plaintiffs*

Dated: June 3, 2019

EFiled: Jun 04 2019 02:30PM EDT
Transaction ID 63322064
Case No. N19C-06-027 VLM

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

AMY L. SIMPLER, HANK        )
SMITH, and DAVID C.         )
DELPERCIO                   )
                            )
        Plaintiffs,         )        C.A. No. _____
                            )
    v.                      )
                            )
HSBC NORTH AMERICA          )
HOLDINGS INC.               )        TRIAL BY JURY OF
a Delaware corporation,     )        12 PERSONS DEMANDED
                            )
        Defendant.          )

## COMPLAINT

Plaintiffs Amy L. Simpler, Hank Smith, and David C. DelPercio (collectively, the "Plaintiffs" or "Former Employees"), by and through their undersigned counsel, and for their Complaint against HSBC North America Holdings Inc., a Delaware corporation ("HSBC," the "Company," or "Defendant"), hereby demand a jury of 12 persons, and allege as follows:

## SUMMARY OF THE ACTION

1.    The Former Employees worked for HSBC in its Wilmington, Delaware office.  HSBC determined that it was going to close the division that the Former Employees worked in and layoff everyone working in that division.  In order to induce the Former Employees to stay and assist with winding down their division, the Company's executive management made multiple promises to the Former

1

Employees that their severance pay under a certain Severance Pay Plan (the "Plan") would be determined by the Former Employees' Benefit Service Date and not their most recent hire date. HSBC's senior management-level executives had real and apparent authority to bind HSBC and acted with a clear intent to amend the terms of the Plan.

2.    After the Former Employees agreed to stay with the Company and assist in the wind down of their division, which required that they forego other opportunities, HSBC denied their claims for severance pay and decided to offer them significantly less than they were promised. As a result, Plaintiffs have been harmed by Defendant's actions.

## THE PARTIES

3.    Amy L. Simpler, Hank Smith, and David C. DelPercio are residents of the State of Delaware and are all former employees of Defendant. Each Plaintiff worked at HSBC's Wilmington, Delaware office starting in the 1990s and briefly worked at Capital One when it was bought by the Company's credit card division. The Former Employees then returned to HSBC's Wilmington, Delaware office shortly thereafter.

4.    Defendant is a Delaware corporation that maintains its principal place of business at 2700 Sanders Road, Prospect Heights, Illinois 60070. Defendant has identified its registered agent with the Delaware Secretary of State as The

2

Corporation Trust Company, located at The Corporation Trust Center, 1209 North Orange Street, Wilmington, Delaware 19801.

## JURISDICTION

5.     This Court has jurisdiction over Defendant because Defendant is a Delaware corporation that conducts business in Delaware, providing sufficient contacts with Delaware as to render the exercise of jurisdiction by the courts of this state permissible.

6.     Venue is proper in this Court because the Defendant is a Delaware corporation, conducts business in the State of Delaware, and the amount in controversy is exceeds $50,000.

## FACTUAL BACKGROUND

7.     The Former Employees began working at HSBC's Wilmington, Delaware office in the 1990s and briefly went to Capital One when it was bought by the Company.   Shortly thereafter, the Former Employees returned to HSBC's Wilmington, Delaware office.

8.     HSBC's executive management, Sanjay N. Coutinho, his bosses, and Ana Orvananos, induced the Former Employees to stay at the Company and forego other opportunities in order to help the Company close their divisions.  Executive management repeatedly promised that the Benefit Service Date would be used to

3

calculate severance pay. The Former Employees reasonably and justifiably relied on the representations made by HSBC when deciding to stay.

9.      After getting them to stay with and help the Company, HSBC switched its decision and stated that the rehire date would be used to calculate severance. This meant that each Former Employee would receive 8 weeks of severance pay rather than 52 for Mr. DelPercio, 44 for Mr. Smith, and 42 for Ms. Simpler. This has left the Former Employees with severance that is less than what was previously promised and subsequently what they relied upon.

10.     Each of the Plaintiffs were former employees of HSBC who were supervised by Mr. Coutinho. Mr. Coutinho managed the Former Employees both before and after he was promoted to Chief Operating Officer in October 2017.

11.     On April 10, 2017, Ms. Simpler and Mr. DelPercio brought to Mr. Coutinho's attention that they began working for HSBC in the 1990's, but that they briefly worked at Capital One when it was bought by HSBC's credit card division. The Former Employees decision to go to Capital One was not one of their choosing, but rather was their only ability to keep their jobs after HSBC sold the division.

12.     During the April 2017 meeting, Ms. Simpler and Mr. DelPercio discussed with Mr. Coutinho whether their most recent hire date of January 2014 would be used to calculate their severance or whether HSBC would use the Benefit Service Date. Although Mr. Coutinho did not say which would be used, he implied

4

that the Benefit Service Date would be considered. He further stated that he would meet with each employee and that he recognized that their situation was unique because they briefly worked at Capital One.

13.    On May 23, 2017, Mr. DelPercio, Ms. Simpler and Mr. Coutinho met to discuss what their severance pay would be if they agreed to stay with HSBC until their division closed in 2018. Mr. Coutinho represented that HSBC would use their Benefit Service Date so they could get the maximum severance of 52 weeks for Mr. DelPercio, 44 weeks for Mr. Smith and 42 weeks for Ms. Simpler. Mr. Coutinho then promised that he would contact Human Resources to set things up.

14.    The next day, Ms. Orvananos, a Vice President and Human Resources Manager, sent an email to Ms. Simpler asking her to confirm that her most recent hire date was September 23, 2013. Ms. Simpler confirmed the date. Ms. Orvananos then responded that she sent some information to Mr. Coutinho and to follow up with him. Ms. Simpler emailed Mr. Coutinho expressing concern and he told her to "please relax" and indicated that she had nothing to worry about because the "closure activities don't trigger until 2018."

15.    A few days later, Mr. Coutinho and Mr. DelPercio had a discussion about his work history with HSBC. Mr. Coutinho did not tell Mr. DelPercio that he was obligated to follow the Plan or that the Former Employees' prior service to HSBC would not be recognized. Instead, Mr. Coutinho asked Mr. DelPercio to send

5

him an email outlining his work history, which he completed on May 30, 2017. In that same email, Mr. DelPercio asked Mr. Coutinho what impact his work history had on his severance. Mr. Coutinho did not respond.

16.     On May 31, 2017, Mr. Coutinho and Ms. Simpler again discussed her severance.   Mr. Coutinho discussed the information provided to him by Ms. Orvananos, but failed to tell Ms. Simpler that her Benefit Service Date would not be considered and instead, asked her to get back to him with additional information.

17.     On June 20, 2017, Mr. Coutinho and Mr. DelPercio had a telephone conference to discuss the amount of severance Mr. DelPercio would receive if he agreed to stay at HSBC until his division closed. During that call, Mr. Coutinho told Mr. DelPercio that he spoke with multiple other people and they all told him that the 2-3 years he was at Capital One might be discounted for purposes of calculating his time in service, but that Mr. DelPercio would still qualify for the maximum 52 weeks of severance because of his Benefit Service Date. Mr. Coutinho further represented that HSBC would not use Mr. DelPercio's rehire date for calculating service time, and that the math would not harm him.

18.     Mr. DelPercio asked if he could get something formal documenting the exact amount of his severance and Mr. Coutinho said that he could not give him a computation in writing because HSBC did not at that time know when his division would be closed.

6

19. Ms. Simpler emailed Mr. Coutinho on August 31, 2017, asking whether HSBC had made any final determinations regarding how much severance she would receive because she was "trying to determine how to proceed with planning my next steps." Mr. Coutinho suggested that they discuss the issue in person, but never told Ms. Simpler that her 2014 rehire date would be used to calculate her severance if she agreed to stay at HSBC until her division closed.

20. On November 15, 2017, Mr. Coutinho met with Ms. Simpler advising her that he spoke with his "bosses" and they all agreed that HSBC would do the "right thing" and use the Benefit Service Date. Mr. Coutinho concluded the conversation by telling Ms. Simpler not to look for a new job and to stay with HSBC until her division closed.

21. On January 9, 2018, HSBC held a team meeting with the Former Employees and others in their group to officially announce that their employment would be terminated in April.

22. After the meeting, Mr. Coutinho met with Mr. Smith, Ms. Simpler and Mr. DelPercio and told the Former Employees that as Chief Operating Officer he would be able to ensure that the "right thing is done." Mr. Coutinho said that he shared their situation with John Hackett and John Panagopoulos, his bosses, and they all agreed that the Benefit Service Date would be used to calculate their severance.

7

23.    Later that day, Mr. Coutinho emailed Ms. Orvananos, stating that he needed her help with Mr. DelPercio's case because he was "transferred to CapOne when credit card operations was sold." Mr. Coutinho wrote "I'm assuming we will use his start date as Nov. 1991 for his severance due in April.  Please review and confirm." Ms. Orvananos then emailed Mr. DelPercio and told him to "open an HR case." Ms. Orvananos did not tell Mr. DelPercio that his November 1991 date would not be used to calculate his severance even though she had just been told that Mr. DelPercio went, with many others, to Capital One.

24.    Mr. DelPercio, Mr. Smith and Ms. Simpler each opened an HR case. On January 11, 2018, Mr. Smith and Ms. Orvananos exchanged emails.  Ms. Orvananos told Mr. Smith that she spoke with "employee relations" and they were "flagging this case."   Ms. Orvananos assured Mr. Smith that if there was a "misunderstanding, we are still on time to rectify the date, so don't worry." Again, Ms. Orvananos led Mr. Smith to believe that his Benefit Service Date would be used to calculate his severance.

25.    The Former Employees were told for the first time on February 26, 2018, that their Benefit Service Date would not be considered in light of their unique situation.  That day, Mr. Smith spoke with Bobby Seymour and Mr. Seymour said that Mr. Coutinho did not have authority to tell the Former Employees that their severance would be based on their Benefit Service Date.

8

26.    The Former Employees have tried to resolve this matter with the HSBC – North America (U.S.) Benefits Administrative Committee (the "Committee") and have exhausted all internal administrative remedies.  The Former Employees sent a letter to the Committee on June 4, 2018, requesting a review of the determinations under the Plan and urging the Committee to grant the Former Employees severance that would be calculated using the Benefit Service Date.  The Committee subsequently responded on August 27, 2018, stating that the Former Employees would only receive 8 weeks of severance pay, meaning that the rehire date would be used instead of the Benefit Service Date.  The Former Employees appealed the decision on October 23, 2018, which the Committee denied on January 17, 2019.

27.    The Committee's denial is based on language in the Plan that states that the Former Employee's most recent hire date and the global career bands are used to determine the years of service for severance benefits.  However, executive management's conduct has amended the written contract by the constant, repeated promises to calculate severance using the Benefit Service Date rather than the rehire date.  HSBC's management over the course of months demonstrated a clear intent to amend the terms of the Plan by calculating the Former Employees' right to severance based on their Benefit Service Date and not their most recent hire date because of their unique circumstance.

9

28.     The Former Employees have been harmed by HSBC's current decision

to deny the full severance of 52 weeks for Mr. DelPercio, 44 weeks for Mr. Smith

and 42 weeks for Ms. Simpler.

### COUNT I: PROMISSORY ESTOPPEL
#### *Amy L. Simpler v. HSBC North America Holdings Inc.*

29.     Plaintiffs repeat and reallege each and every allegation contained in

previous paragraphs of this Complaint as if fully set forth herein.

30.     Executive management, including Mr. Coutinho, his bosses and Ms.

Orvananos, made promises to Ms. Simpler that the Company would use the Benefit

Service Date, rather than her rehire date, when calculating her severance.

31.     On various occasions, Mr. Coutinho failed to inform Ms. Simpler that

her 2014 rehire date would be used to calculate severance if she agreed to stay at

HSBC until her division closed.   Instead, he led her to believe that the Company

would use the Benefit Service Date.   Mr. Coutinho even informed her that he spoke

with his bosses and that HSBC would do the right thing and use the Benefit Service

Date.   During the same conversation, he told her that she should not look for a new

job, but stay with HSBC until the division closed.   This was all done to induce her

reliance to stay at HSBC because HSBC needed her experience and expertise before

closing the division.   Given the seniority of Mr. Coutinho, Ms. Orvananos, and

others, Ms. Simpler's reliance on their verbal and written statements was reasonable.

10

32.    Instead of exploring other opportunities, Ms. Simpler relied on Mr.

Coutinho's promises and stayed with HSBC.  She did this on the reliance and belief

that if she stayed with the Company, she would receive 42 weeks of severance pay.

33.    HSBC is now stating that it can only use the rehire date when

calculating severance.

34.    As a result of HSBC's failure to use the Benefit Service Date, Ms.

Simpler has been harmed.  The only way to avoid injustice to Ms. Simpler is to

enforce the executive managements' promises that the Benefit Service Date will be

used when calculating severance pay.

## COUNT II: PROMISSORY ESTOPPEL
### *Hank Smith v. HSBC North America Holdings Inc.*

35.    Plaintiffs repeat and reallege each and every allegation contained in

previous paragraphs of this Complaint as if fully set forth herein.

36.    Executive management, including Mr. Coutinho, his bosses and Ms.

Orvananos, made promises to Mr. Smith that the Company would use the Benefit

Service Date, rather than his rehire date, when calculating his severance.

37.    On various occasions, Mr. Coutinho failed to inform Mr. Smith that his

rehire date would be used to calculate severance.  Instead, Mr. Coutinho informed

him that the right thing would be done, meaning that the Company would use the

Benefit Service Date when calculating severance. Mr. Coutinho even informed him

that he spoke with his bosses and they agreed that HSBC would do the right thing

11

and use the Benefit Service Date. This was all done to induce his reliance to stay at HSBC because HSBC needed his experience and expertise before closing the division. Given the seniority of Mr. Coutinho, Ms. Orvananos, and others, Mr. Simpler's reliance on their verbal and written statements was reasonable.

38.    Instead of exploring other opportunities, Mr. Smith relied on Mr. Coutinho's promises and stayed with HSBC.

39.    HSBC is now stating that it can only use the rehire date when calculating severance.

40.    As a result of HSBC's failure to use the Benefit Service Date, Mr. Smith has been harmed. The only way to avoid injustice to Mr. Smith is to enforce the executive managements' promises that the Benefit Service Date will be used when calculating severance pay.

## COUNT III: PROMISSORY ESTOPPEL
### *David C. DelPercio v. HSBC North American Holdings Inc.*

41.    Plaintiffs repeat and reallege each and every allegation contained in previous paragraphs of this Complaint as if fully set forth herein.

42.    Executive management, including Mr. Coutinho, his bosses and Ms. Orvananos, made promises to Mr. DelPercio that the Company would use the Benefit Service Date, rather than his rehire date, when calculating his severance.

43.    On various occasions, Mr. Coutinho failed to inform Mr. DelPercio that his January 2014 rehire date would be used to calculate severance and instead, led him to believe that the Company would use his Benefit Service Date.

44.    On many occasions, Mr. Coutinho represented that staying at HSBC would not harm his ability to use his Benefit Service Date to get 52 weeks of severance.   Mr. Coutinho further represented that HSBC may discount Mr. DelPercio's time at Capital one, but that would not change the amount of severance he received because the math would not harm him.   Mr. Coutinho even informed him that he spoke with his bosses and they agreed that HSBC would do the right thing and use the Benefit Service Date.   This was all done to induce his reliance to stay at HSBC because HSBC needed his experience and expertise before closing his division.   Given the seniority of Mr. Coutinho, Ms. Orvananos, and others, Mr. DelPercio's reliance on their verbal and written statements was reasonable.

45.    Instead of exploring other opportunities, Mr. DelPercio relied on the promises made by executive management and stayed with HSBC.   Mr. Delpercio relied on Mr. Coutinho's promises that the Benefit Service Date would be used.

46.    HSBC is now stating that it can only use the rehire date when calculating severance.

47.    As a result of HSBC's failure to use the Benefit Service Date, Mr. DelPercio has been harmed.   The only way to avoid injustice to Mr. DelPercio is to

13

enforce the executive managements' promises that the Benefit Service Date will be used when calculating severance pay.

### COUNT IV: UNJUST ENRICHMENT
*Amy L. Simpler v. HSBC North America Holdings Inc.*

48.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

49.   By wrongfully changing the amount of the severance pay due to Ms. Simpler, Defendant has unjustly retained a benefit to her detriment.

50.   Defendant has received the benefit of the Ms. Simpler's experience and expertise when closing her respective division.

51.   Ms. Simpler has suffered and continues to suffer a monetary and opportunity loss due to Defendant's promise to pay her severance using the Benefit Service Date.

52.   As is set forth in more detail above, Ms. Simpler stayed at HSBC under the belief that the Benefit Service Date would be used, thus allowing her to receive 42 weeks of severance pay and allowing the Company to continue to use her experience and expertise until they closed her division.

53.   As a result, there is no justification for Defendant's refusal to pay Ms. Simpler her promised severance.

54.   To the extent there is no adequate remedy at law, Ms. Simpler pleads a claim of unjust enrichment against the Defendant in the alternative.

14

## COUNT V: UNJUST ENRICHMENT
### *Hank Smith v. HSBC North America Holdings Inc.*

55.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

56.     By wrongfully changing the amount of the severance pay due to Mr. Smith, Defendant has unjustly retained a benefit to his detriment.

57.     Defendant has received the benefit of the Mr. Smith's experience and expertise when closing his respective division.

58.     Mr. Smith has suffered and continues to suffer a monetary and opportunity loss due to Defendant's promise use the Benefit Service Date when calculating his severance.

59.     As is set forth in more detail above, Mr. Smith stayed at HSBC under the belief that the Benefit Service Date would be used, thus allowing him to receive 44 weeks of severance pay and allowing HSBC to continue to use his experience and expertise before closing his division.

60.     As a result, there is no justification for Defendant's refusal to pay Mr. Smith his promised severance.

61.     To the extent there is no adequate remedy at law, Mr. Smith pleads a claim of unjust enrichment against the Defendant in the alternative.

## COUNT VI: UNJUST ENRICHMENT
### *David C. DelPercio v. HSBC North American Holdings Inc.*

15

62.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

63.   By wrongfully changing the amount of the severance pay due to Mr. DelPercio, Defendant has unjustly retained a benefit to his detriment.

64.   Defendant has received the benefit of the Mr. DelPercio's experience and expertise when closing his respective division.

65.   Mr. DelPercio has suffered and continues to suffer a monetary and opportunity loss due to Defendant's promise use the Benefit Service Date when calculating his severance.

66.   As is set forth in more detail above, Mr. DelPercio stayed at HSBC under the belief that the Benefit Service Date would be used, thus allowing him to receive 52 weeks of severance pay and allowing the Company to continue to use his experience and expertise before closing his division.

67.   As a result, there is no justification for Defendant's refusal to pay Mr. DelPercio his promised severance.

68.   To the extent there is no adequate remedy at law, Mr. DelPercio pleads a claim of unjust enrichment against the Defendant in the alternative.

## COUNT VII: QUANTUM MERUIT
### *Amy L. Simpler v. HSBC North America Holdings Inc.*

69.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

16

70.    Ms. Simpler stayed at HSBC under the impression that she would receive severance calculated using the Benefit Service Date and not her January 2014 rehire date. Mr. Coutinho, as well as other executive management, led her to believe this was going to happen.

71.    The Company should have known that Ms. Simpler expected her severance to be calculated using the Benefit Service Date since she had been reassured on multiple occasions that the right thing would be done and Ms. Simpler's severance would not stem from her rehire date.

72.    Ms. Simpler has been harmed as a result of HSBC's failure to use her Benefit Service Date when calculating severance pay.

## COUNT VIII: QUANTUM MERUIT
### *Hank Smith v. HSBC North America Holdings Inc.*

73.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

74.    Mr. Smith stayed at HSBC under the impression that he would receive severance that was calculated using the Benefit Service Date and not his rehire date. Mr. Coutinho, as well as other executive management, led him to believe this was true from the previous conversations where Mr. Coutinho promised that the rehire date would not be used in the calculation.

75.   The Company should have known that Mr. Smith expected his severance to use the Benefit Service Date since he had been promised that it would be used on multiple occasions by executive management.

76.   Mr. Smith has been harmed as a result of HSBC's failure to use his Benefit Service Date when calculating severance pay.

### COUNT IX: QUANTUM MERUIT
*David C. DelPercio v. HSBC North American Holdings Inc.*

77.   Plaintiffs repeat and reallege the allegations of the preceding paragraphs of the Complaint as if set forth fully herein.

78.   Mr. DelPercio stayed at HSBC under the impression that he would receive severance that was calculated using the Benefit Service Date and not his rehire date. Mr. Coutinho, as well as other executive management, led him to believe this was true from the previous conversations where Mr. Coutinho as well as other executive management assured him that the right thing would be done.

79.   The Company should have known that Mr. DelPercio expected his severance to use the Benefit Service Date since he had been promised that it would be used on multiple occasions by executive management.

80.   Mr. DelPercio has been harmed as a result of HSBC's failure to use his Benefit Service Date when calculating severance pay.

18

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Amy L. Simpler, Hank Smith and David C. DelPercio, respectfully request that the Court enter judgment:

a.      requiring Defendant to use the Benefit Service Date when calculating each of the Plaintiffs' severance;

b.      awarding Plaintiffs' their respective severance due and owing in accordance with each Plaintiffs' respective Benefit Service Date;

c.      awarding Plaintiffs their attorneys' fees and costs;

d.      awarding Plaintiffs pre- and post-judgment interest; and

e.      awarding Plaintiffs any and all other relief the Court deems just and proper.

BERGER HARRIS LLP

By: _/s/   David B. Anthony_____
    Brian M. Gottesman, Esq. (DE ID No. 4404)
    David B. Anthony, Esq. (DE ID No. 5452)
    Peter C. McGivney, Esq. (DE ID No. 5779)
    1105 N. Market Street, Ste 1100
    Wilmington, DE 19801
    (302) 655-1140  telephone
    (302) 655-1131  fax
    bgottesman@bergerharris.com
    danthony@bergerharris.com
    pmcgivney@bergerharris.com

    *Attorneys for Plaintiffs*

Dated: June 3, 2019