**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AMY L. SIMPLER, HANK SMITH, and DAVID C. DELPERCIO,

Plaintiffs,

v.

HSBC NORTH AMERICA HOLDINGS, INC.,

Defendant.

C.A. No. 1:19-cv-01519-UNA

**BRIEF IN SUPPORT OF DEFENDANT HSBC NORTH AMERICA HOLDINGS, INC.'S MOTION TO DISMISS**


OF COUNSEL:

Samuel P. Myler
Nancy G. Ross
Megan S. Webster
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
smyler@mayerbrown.com
megan.webster@mayerbrown.com
nross@mayerbrown.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Kenneth J. Nachbar (#2067)
Ryan D. Stottmann (#5237)
Sabrina M. Hendershot (#6286)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
knachbar@mnat.com
rstottmann@mnat.com
shendershot@mnat.com

*Attorneys for Defendant HSBC North America Holdings, Inc.*


September 20, 2019

## TABLE OF CONTENTS

**Page**


NATURE AND STAGE OF THE PROCEEDINGS ..... 1

SUMMARY OF THE ARGUMENT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 3

I. LEGAL STANDARD ..... 3

II. ERISA PREEMPTS ALL STATE LAWS AND STATE LAW CAUSES OF ACTION THAT “RELATE TO” AN EMPLOYEE BENEFIT PLAN ..... 4

III. THE SEVERANCE PAY PLAN IS AN EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA ..... 5

IV. PLAINTIFFS’ CLAIMS “RELATE TO” THE SEVERANCE PAY PLAN FOR ERISA PREEMPTION PURPOSES ..... 7

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401 (3d Cir. 1992)....8, 9

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)....4, 5

*Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338 (3d Cir. 2004)....2

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)....4

*Berger v. Edgewater Steel Co.*, 911 F.2d 911 (3d Cir. 1990)....8

*Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780 (3d Cir. 1998)....5

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133 (1990)....7, 8, 9

*Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357 (3d Cir. 2013)....4

*Kollman v. Hewitt Associates, LLC*, 487 F.3d 139 (3d Cir. 2007)....8, 9

*Menkes v. Prudential Ins. Co. of America*, 762 F.3d 285 (3d Cir. 2014)....6, 7, 8, 9

*Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987)....4

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995)....1

*Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65 (3d Cir. 2012)....4, 5, 8, 9

*New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297 (3d Cir. 2014)....4

*Pane v. RCA Corp.*,
868 F.2d 631 (3d Cir. 1989)....................5, 7

*Pension Benefit Guar.Corp. v. White Consol. Indus.*,
998 F.2d 1192 (3d Cir. 1993)....................2

*Phillips v. County of Allegheny*,
515 F.3d 224 (3d Cir. 2008)....................3

*Pilot Life Ins. Co. v. Dedeaux*,
481 U.S. 41 (1987)....................4, 8

*Simpler v. HSBC North America Holdings, Inc.*,
Case No. N19C-06-027-VLM (Del. Super. Ct.)....................1

**Statutes**

28 U.S.C. § 1331....................1

29 U.S.C. § 1002(1)....................5

29 U.S.C. § 1132(e)(1)....................1

29 U.S.C. § 1133....................6

29 U.S.C. § 1144(a)....................4

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6)....................1, 3

United States Department of Labor Regulations Section 2510.3-2(b)....................2

## NATURE AND STAGE OF THE PROCEEDINGS

On June 4, 2019, plaintiffs Amy L. Simpler, Hank Smith, and David C. DelPercio ("Plaintiffs") filed a nine-count complaint ("the Complaint") alleging various state law claims for severance benefits against defendant HSBC North America Holdings Inc. ("HSBC") in the Superior Court of the State of Delaware. *Simpler v. HSBC North America Holdings, Inc.*, Case No. N19C-06-027-VLM (Del. Super.) ("the State Court Action"). HSBC was served in the State Court Action on July 24, 2019, but immediately removed the action to this Court on the ground that the federal courts have original jurisdiction over each of Plaintiffs' state law claims under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). (D.I. 1, Notice of Removal, ¶ 4). HSBC now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## SUMMARY OF THE ARGUMENT

Plaintiffs' claims against HSBC fail to state a claim upon which relief may be granted because they are preempted by federal law. The United States Court of Appeals for the Third Circuit has repeatedly recognized that the broad preemptive force of the Employee Retirement Income Security Act of 1974 ("ERISA") preempts all state common law or equitable causes of action that "relate to" an employee benefit plan governed by ERISA. Because the severance benefits at issue in this case are governed by the terms of an ERISA employee benefit plan sponsored by HSBC, Plaintiffs' claims can only be brought, if at all, under ERISA's civil enforcement scheme. To allow Plaintiffs to proceed on the state common law and equitable claims set forth in the Complaint would directly contravene ERISA's express preemption provisions and would undermine Congress's goal of providing employee benefit plan sponsors a single, uniform, and predictable body of federal laws and regulations. *See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657 (1995).

**STATEMENT OF FACTS**

Plaintiffs are three individual former employees of HSBC originally hired in the 1990s to work at HSBC's Wilmington, Delaware office. (D.I. 1-1, Plaintiffs' Original Complaint ("Compl."), ¶¶ 3, 7). In 2011, Capital One Financial ("Capital One") purchased the HSBC division that employed Plaintiffs. In connection with that transaction, Plaintiffs were terminated as HSBC employees and accepted positions with Capital One. (*Id.* ¶¶ 3, 7). Plaintiffs remained with Capital One until 2014, at which point they were rehired by HSBC. (*Id.* ¶¶ 12, 19, 31). Plaintiffs' second term of employment with HSBC lasted from 2014 until April 2019 when their division was permanently closed and they were laid off. (*Id.* ¶ 21).

As regular full-time U.S. employees when they were terminated in April 2019, Plaintiffs were eligible for certain severance benefits provided pursuant to the terms of the HSBC – North America (U.S.) Severance Pay Plan (the "Severance Pay Plan"). (*Id.* ¶¶ 1, 26-27). The terms of the Severance Pay Plan in effect at the time Plaintiffs were laid off are set forth in the HSBC – North America (U.S.) Severance Pay Plan Restatement dated October 1, 2016 (the "Severance Pay Plan Document"). By its express terms, the Severance Pay Plan Document provides that the Severance Pay Plan is an employee welfare benefit plan established pursuant to and governed by ERISA.[1] (*See* Severance Pay Plan Document, attached hereto as Exhibit A, at 1 ("The Plan is an unfunded welfare benefit plan for purposes of the Employee Retirement Income Security Act of 1974 . . . and a severance pay plan within the meaning of United States Department of Labor regulations section 2510.3-2(b)"), 8 ("The Plan shall be governed and construed in accordance with ERISA . . . .")).

---

[1] The Court may consider the terms of the Severance Pay Plan Document in ruling on HSBC's motion despite their being extraneous to the pleadings because they are integral to and form the basis for Plaintiffs' claims. *See Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004); *Pension Benefit Guar.Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Pursuant to the terms of the Severance Pay Plan Document, eligible dismissed employees are entitled to "two weeks of severance pay per year of service . . . up to a maximum 52 weeks." (*Id.* at 4). The plan terms further provide that "years of service" are calculated based on the employee's "most recent date of hire" according to HSBC's personnel records and that "[o]nly completed years of service are counted." (*Id.* at 5). Because Plaintiffs had completed just 4 full years of service between when they were rehired in 2014 and terminated in 2019, they were each awarded a total of 8 weeks of severance pay. (Compl. ¶ 26).

Following their termination, Plaintiffs filed an administrative claim with the HSBC – North America (U.S.) Plan Administrative Committee ("the Committee") in which they disputed the amount of severance they received. (*Id.*). They argued that notwithstanding the Severance Pay Plan's express terms providing that years of service are calculated based on an employee's most recent hire date, they should have been awarded one year of service for each year they worked for HSBC regardless of the fact that they had only completed four years of service since they were rehired in 2014. (*Id.*). In support of their position, they argued, *inter alia*, that their supervisor told them before they were laid off that their severance would be calculated based on their ***original*** hire date (or "Benefits Service Date"). (*Id.* ¶¶ 26-27). The Committee rejected this argument and denied their administrative claims and appeals. Plaintiffs subsequently filed the instant action.

## ARGUMENT

## I. LEGAL STANDARD

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007)). The complaint's allegations must set forth "more than labels and

conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1959. Although a court must accept the complaint's allegations as true, it must still set forth sufficient facts to support each element of a legally cognizable claim. *Jang v. Boston Sci. Scimed, Inc.*, 729 F.3d 357, 367 (3d Cir. 2013). When the allegations of a complaint do not satisfy this requirement, "this basic deficiency should . . . be exposed at a point of minimum expenditure of time and money by the parties and the court." *Twombly*, 127 S. Ct. at 1966.

## II. ERISA PREEMPTS ALL STATE LAWS AND STATE LAW CAUSES OF ACTION THAT "RELATE TO" AN EMPLOYEE BENEFIT PLAN

Among Congress's primary goals in passing ERISA was to "provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014) ("Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law."). To accomplish this goal and ensure that the regulation of benefit plans remained an exclusively federal concern, ERISA includes an expansive preemption provision designed to broadly preempt "any and all state laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). As the Supreme Court has emphasized, the preemptive force of ERISA is "extraordinary." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

Although its language suggests that ERISA's preemption clause applies only to "state laws" (*i.e.* statutes and legislations), the Supreme Court has long held that the extraordinary preemptive force of ERISA is not so limited. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53-54 (1987). State law ***claims and causes of action***, such as the promissory estoppel, unjust enrichment, and quantum meruit claims at issue in this case, are also preempted where they relate to an ERISA plan. *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) ("State

common law claims fall within th[e] definition [of "State law"] and, therefore, are subject to ERISA preemption."). Thus, the Third Circuit has recognized that the preemptive force of ERISA demands that state law causes of action related to an ERISA plan must be brought, if at all, under the "set of integrated civil enforcement remedies designed to redress violations of [ERISA] or the terms of a plan." *Id.*; *Davila*, 542 U.S. at 209 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."). Such is the case even if ERISA's civil enforcement scheme does not provide for a corresponding federal remedy. *Davila.*, 542 U.S. at 216 ("Congress's intent to make the ERISA civil enforcement mechanism exclusive would be undermined if state causes of action that supplement the ERISA § 502(a) remedies were permitted, even if the elements of the state cause of action did not precisely duplicate the elements of an ERISA claim.").

## III. <u>THE SEVERANCE PAY PLAN IS AN EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA</u>

In assessing whether a state common law or equitable cause of action is preempted by ERISA, the threshold inquiry is whether the "plan or program" to which the cause of action relates is an "employee benefit plan" as defined and governed by ERISA. *See Pane v. RCA Corp.*, 868 F.2d 631, 635 (3d Cir. 1989). There can be question that the Severance Pay Plan at issue in this case qualifies as an "ERISA plan."

ERISA defines an "employee benefit plan" as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing [certain benefits] for its participants or their beneficiaries, through the purchase of insurance or otherwise[.]" 29 U.S.C. § 1002(1). Under Third Circuit law, the "crucial factor" in determining whether a plan or program satisfies this definition is "whether the employer has expressed an intention to provide benefits on a regular and long-term basis." *Gruber v. Hubbard Bert Karle*

*Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998). In making this determination, courts in the Third Circuit assess whether based on "the surrounding circumstances" a reasonable person could ascertain: "'(1) the intended benefits, (2) a class of beneficiaries, (3) the source of financing, and (4) procedures for receiving benefits.'" *Menkes v. Prudential Ins. Co. of America*, 762 F.3d 285, 290 (3d Cir. 2014) (quoting *Shaver v. Siemens Corp.*, 670 F.3d 462, 475 (3d Cir. 2012)). In addition to these factors, courts look to whether the plan or program provides for "the 'establishment and maintenance of a separate and ongoing administrative scheme,' which the plan administrator must set up in order to determine eligibility for benefits." *Menkes*, 762 F.3d at 290 (quoting *Shaver*, 670 F.3d at 475).

As an initial matter, the Complaint's allegations and Plaintiffs' conduct demonstrate that Plaintiffs' claims are governed by the terms of the Severance Pay Plan Document. Its terms, therefore, are among the "surrounding circumstances" the Court may consider when assessing whether the plan at issue is governed by ERISA. In the Complaint, Plaintiffs themselves refer to the Severance Pay Plan in describing the benefits they are seeking. (Compl. ¶ 1 (referring to the severance benefits at issue in this case as "severance pay under a certain Severance Pay Plan")). They further allege that before filing this lawsuit they "tried to resolve this matter with the HSBC – North America (U.S.) Benefits Administrative Committee ('the Committee')" under the Severance Pay Plan Document's ERISA-mandated administrative claims procedure. (*Id.* ¶¶ 26-27). *See also* 29 U.S.C. § 1133 (requiring every employee benefit plan to establish a procedure for reviewing participant claims for benefits). Finally, Plaintiffs allege that their claims were denied by the Committee based on the plan document's express terms. (Compl. ¶ 27 ("The Committee's denial is based on language in the Plan that states that the Former Employee's most recent hire date and global career bands are used to determine the years of service for severance benefits.").

By its express terms, the Severance Pay Plan Document provides that it is a "welfare benefit plan for purposes of [ERISA]," (Ex. A, Severance Plan Document, at 1), and that it "shall be governed and construed in accordance with ERISA" (*id*. at 8). The plan's "intended benefits" are described in Section V of the Severance Pay Plan Document, which sets forth the formula for calculating eligible employees' severance pay. (*Id*. at 4-5). Sections III and IV, which govern "Eligible Employees" and "Conditions of Ineligibility," clearly identify the intended "class of beneficiaries" entitled to plan benefits. (*Id.* at 2-3). As for the "source of financing," the plan provides in Section XII that all benefits shall be paid from HSBC's general assets. (*Id.* at 8). And finally, Sections VI and VII entitled "Payment of Severance Pay" and "Plan Administration," respectively, describe in detail the procedures that must be followed in order to receive benefits. (*Id.* at 6-7). Together these plan features and claims procedures constitute "a separate and ongoing administrative scheme" and establish that HSBC's "intention [was] to provide benefits on a regular and long-term basis" to eligible employees under the plan. *Menkes*, 762 F.3d at 291. Accordingly, the Severance Pay Plan clearly constitutes an employee benefit plan governed by ERISA.

## IV. PLAINTIFFS' CLAIMS "RELATE TO" THE SEVERANCE PAY PLAN FOR ERISA PREEMPTION PURPOSES

Having established that the Severance Pay Plan constitutes an "employee benefit plan" under ERISA, the next question is whether the state law causes of action at issue "relate to" the plan. *See Pane*, 868 F.2d at 635. Pursuant to the Supreme Court's decision in *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990), the Third Circuit has instructed that a state law cause of action relates to and is preempted by ERISA if the following two requirements are met: (a) the existence of the ERISA plan is a "critical factor" in assessing the merits of the cause of action; and (b) the trial court's inquiry in adjudicating the state law claims would be "directed to" the plan. *1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d

401, 406 (3d Cir. 1992). Under this standard, the claims pleaded in the Complaint are indisputably "related to" the Severance Pay Plan for ERISA preemption purposes.

Plaintiffs raise three different state law causes of action: (1) promissory estoppel, (2) unjust enrichment, and (3) quantum meruit. Although Plaintiffs plead these causes of action as separate counts on behalf of each of the three individual plaintiffs (for a total of 9 counts), they are all premised on the same basic factual allegations related to the Severance Pay Plan. With respect to their promissory estoppel claims (Counts I-III), Plaintiffs allege that their supervisor's representations regarding how severance would be calculated constituted a promise that they each relied upon to their detriment. (Compl. ¶¶ 29-47). Their unjust enrichment claims (Counts IV-VI) similarly allege that after they were informed their division would be closed, Plaintiffs continued to work for HSBC based on their supervisor's alleged representations regarding the amount of their severance benefits. (*Id.* ¶¶ 48-68). Finally, with respect to their quantum meruit claims (Counts VII-IX), Plaintiffs allege that they were "under the impression" that their original hire date would be used to calculate severance and that HSBC "should have known" that this was their expectation. (*Id.* ¶¶ 69-80).

Both the Supreme Court and the Third Circuit have time-and-again held that factually analogous state law claims—*i.e.* claims alleging that a party misrepresented the terms of an ERISA plan—are squarely preempted by ERISA under *Ingersoll-Rand*. *See, e.g., Pilot Life Ins. Co.*, 481 U.S. at 47 (fraudulent inducement claim preempted by ERISA); *Menkes*, 762 F.3d at 295 (claim that defendants misrepresented plan exclusionary clauses preempted); *Iola*, 700 F.3d at 85 (claims alleging misrepresentations related to size of plan reserve fund preempted); *Kollman v. Hewitt Associates, LLC*, 487 F.3d 139, 150 (3d Cir. 2007) (claim that defendant misrepresented benefits calculation preempted); *Berger v. Edgewater Steel Co.*, 911 F.2d 911,

923 (3d Cir. 1990) (misrepresentation claim premised on a deceptive statement related to amendments to ERISA plan preempted).

In applying *Ingersoll-Rand* to such claims, the Third Circuit has invariably held that the existence of an ERISA plan is a "critical factor" for preemption purposes because for the plaintiffs to prevail they "would have to plead, and the court to find, that ***the plans were in fact adopted***." *Iola*, 700 F.3d at 85 (citing *Ingersoll-Rand*, 498 U.S. at 142) (emphasis added). In other words, claims premised on the alleged misrepresentation of plan terms are necessarily "related to" an ERISA plan because "if there were no plan, there would [] be no cause of action." *Nobers*, 968 F.2d at 406-07. Such is the case here, for if the Severance Pay Plan did not exist, there would be nothing for Plaintiffs' former supervisor to have allegedly misrepresented. The Severance Pay Plan's existence is therefore not only a "critical factor" under *Ingersoll-Rand*, but the *sine qua non* of their state law causes of action.

In holding that analogous misrepresentation and fraud-type claims are preempted, the Third Circuit has also held that in order to resolve claims involving the alleged misrepresentation of plan terms the court must "assess [the] representations in light of the plaintiffs' benefits and rights under the plans." *Iola*, 700 F.3d at 84. This type of analysis, which is necessarily "directed to" the terms of the plan under *Ingersoll-Rand*, would similarly be required with respect to the claims set forth in the Complaint. *Id.* For example, to address the merits of Plaintiffs' claims and assess the accuracy of the alleged misrepresentations, the Court would at a minimum be required to interpret and construe the Severance Pay Plan terms governing how severance benefits are calculated. Not only would this inquiry necessarily be "directed to" the plan, but the interpretation and construction of plan terms has been expressly identified as "sit[ting] within the heartland of ERISA," *Menkes*, 762 F.3d at 295, and strictly proscribed outside the confines of ERISA's carefully integrated civil enforcement scheme. *Kollman*, 487 F.3d at 150.

Accordingly, because the existence of the Severance Pay Plan is a "critical factor" in assessing Plaintiffs' state law claims, and the resolution of their claims would necessarily be "directed to" the plan terms, Plaintiffs' nine-count complaint is preempted by ERISA and must be dismissed.[2]

**CONCLUSION**

For the foregoing reasons, defendant HSBC North America Holdings, Inc. respectfully requests that this Court enter an order dismissing Plaintiffs' complaint in its entirety.

OF COUNSEL:

Samuel P. Myler
Nancy G. Ross
Megan S. Webster
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
smyler@mayerbrown.com
megan.webster@mayerbrown.com
nross@mayerbrown.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Ryan D. Stottmann
Kenneth J. Nachbar (#2067)
Ryan D. Stottmann (#5237)
Sabrina M. Hendershot (#6286)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
knachbar@mnat.com
rstottmann@mnat.com
shendershot@mnat.com
*Attorneys for Defendant HSBC North America Holdings, Inc.*

September 20, 2019

[2] Plaintiffs' state law claims cannot be converted to ERISA claims by the Court *sua sponte*. The elements of Plaintiffs' claims are not equivalent to any of the available ERISA remedies, and therefore, to convert the claims would run-afoul of the pleading requirements of the Federal Rules of Civil Procedure, which mandate plaintiffs to provide defendants with adequate notice of the claims and allegations against them. *See, e.g. Haase v. Metropolitan Life Ins. Co.*, 198 F. Supp. 3d 412, 426 (E.D. Pa. 2016).

**CERTIFICATE OF SERVICE**

I, Sabrina M. Hendershot, hereby certify that on September 20, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

*/s/ Sabrina M. Hendershot*
Sabrina M. Hendershot (#6286)