IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMY L. SIMPLER, HANK SMITH, and DAVID C. DELPERCIO, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 1:19-cv-01519-LPS ) ) |
| HSBC NORTH AMERICA HOLDINGS, INC., | ) ) ) |
| Defendant. | ) |

**DEFENDANT HSBC NORTH AMERICA HOLDINGS, INC.'S**
**OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Defendant HSBC North America Holdings, Inc. ("HSBC"), by and through its undersigned counsel, respectfully submits its opposition to Plaintiffs' Motion for Remand for Lack of Subject Matter Jurisdiction, and in support thereof states as follows:

1. On June 4, 2019, Plaintiffs filed a Complaint against HSBC in the Superior Court of Delaware, *Simpler v. HSBC North America Holdings, Inc.*, Case No. N19C-06-027-VLM (Del. Super. Ct.) (the "Delaware Superior Court Action").

2. On August 13, 2019, HSBC removed the action to this Court on the ground that it has original jurisdiction over Plaintiffs' claims pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (D.I. 1, Notice of Removal).

3. On September 20, 2019, HSBC filed a motion to dismiss Plaintiffs' state law claims on the ground that they are preempted by ERISA because they relate to the HSBC North America (U.S.) Severance Pay Plan (the "Severance Pay Plan"), which is an ERISA-governed welfare benefit plan. (D.I. 7, Defendant's Motion to Dismiss ("Mot. Dism.")). On that same day, Plaintiffs filed a motion to remand this action back to state court. (D.I. 6, Plaintiffs' Motion

for Remand for Lack of Subject Matter Jurisdiction ("Mot. Remand")). For the reasons set forth below, Plaintiffs' motion should be denied. Remanding Plaintiffs' claims, all of which fall squarely within the scope of ERISA's civil enforcement scheme, based simply on how they are styled rather than their substance, would undermine Congress's express goal of "ensur[ing] that employee benefit plan regulation is 'exclusively a federal concern.'" *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

**ARGUMENT**

4.     Pursuant to 28 U.S.C. § 1441(a), parties may remove a state court action to federal court if the action is one over which the federal courts have original jurisdiction. As set forth in HSBC's notice of removal, the state court action Plaintiffs originally filed is subject to the original jurisdiction of this Court because it involves claims governed by ERISA and related to an ERISA benefit plan. (D.I. 1, Notice of Removal ¶ 4).

5.     Plaintiffs offer two basic arguments in opposition to HSBC's removal and in support of their motion for remand. First, they contend that the Severance Pay Plan at issue does not constitute an "employee benefit plan" governed by ERISA. (Mot. Remand ¶¶ 4, 17). Second, they argue that, even if the Severance Pay Plan qualifies as an "ERISA plan," their complaint is not removable to federal court because they have pleaded only "state law causes of action based on HSBC's conduct." (*Id.* ¶¶ 4, 11). Neither one of these arguments has any merit.

**I.    PLAINTIFFS' CLAIMS ARE COMPLETELY PREEMPTED BY ERISA AND SUBJECT TO REMOVAL**

6.     Ordinarily, the federal district courts are bound by the "well-pleaded complaint" rule when assessing whether a case is one "arising under the Constitution, laws, or treaties of the United States" for purposes of removal. *Aetna Health, Inc.*, 542 U.S. at 207 (citing *Franchise*

*Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-10 (1983)). The fact that a party intends to raise a defense afforded by or derived from federal law, such as a federal preemption defense, is typically insufficient to create statutory "arising under" jurisdiction. *Aetna Health, Inc.*, 542 U.S. at 207. However, there are exceptions to the well-pleaded complaint rule, one of which applies when "a federal statue wholly displaces the state-law cause of action through complete preemption." *Id.* (quoting *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Under the complete preemption doctrine, "when [a] federal statute completely preempts a state law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law" for removal purposes. *Aetna Health, Inc.*, 542 U.S. at 208.

7. In *Aetna Health, Inc.*, the Supreme Court recognized that ERISA is among the few federal statutes with "such extraordinary preemptive power" that the complete preemption doctrine applies. *Id.* As the Third Circuit has explained, removal on complete preemption grounds is necessary in the context of ERISA, because without it, plaintiffs could easily thwart Congress's goal of limiting the types of claims that can be brought related to ERISA benefit plans through artful pleading. *DiFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 447-47 (3d Cir. 2003); *Wood v. Prudential Ins. Co. of America*, 207 F.3d 674, 679 (3d Cir. 2000). Accordingly, any state law cause of action that purports to duplicate, supplement, or supplant one of ERISA's six integrated civil enforcement provisions is completely preempted and must be construed as a claim "arising under federal law" for removal purposes. *Aetna Health, Inc.*, 542 U.S. at 209.

8. Under Third Circuit precedent, state law claims are completely preempted by ERISA and subject to removal if three requirements are satisfied. First, the benefit plan or program forming the basis for removal must qualify as an "employee benefit plan" subject to

ERISA.  *Pascack Valey Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). Second, the state law claim must fall within the scope of ERISA's civil enforcement scheme set forth in ERISA § 502(a). *Id. See also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987) ("[C]auses of action within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court."). And third, there must be "no other independent legal duty" that supports the plaintiff's claim. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014).  Here, each of these requirements are satisfied, and therefore, Plaintiffs' claims are completely preempted.[1]

      A.      **The Severance Pay Plan is an "employee benefit plan" governed by ERISA.**

9. The Severance Pay Plan, like most severance packages, qualifies as an "employee benefit plan" subject to ERISA.  See *Alston v. Atlantic Elec. Co.*, 962 F. Supp. 616, 623 (D.N.J. 1997) (finding that most severance package are subject to ERISA). ERISA defines an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing [benefits] for its participants or their beneficiaries through the purchase of insurance or otherwise[.]"  29 U.S.C. § 1002(1). The Supreme Court has instructed that a plan or program constitutes an employee benefit plan for purposes of ERISA if it involves an ongoing administrative scheme. *Fort*

---

[1]    A state law cause of action may be subject to removal on the ground that it "falls within the scope" of ERISA § 502(a), but still fail to state a cognizable ERISA claim capable of surviving a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1277 (6th Cir. 1991) ("That a complaint ultimately fails to state a claim upon which relief can be granted is of no relevance to the question of subject matter jurisdiction."); *Lee v. E.I. DuPont de Nemours and Co.*, 894 F.2d 755, 757 (5th Cir. 1990) (preempting state law claims that employer misrepresented entitlement to benefits "despite the fact that ERISA itself provided no remedy for the alleged misrepresentations"). *See also Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 11 (2d Cir. 1992) (collecting cases) *abrogated on other grounds by Stevenson v. Bank of New York Co., Inc.*, 609 F.3d 56 (2d Cir. 2010).

*Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11-12 (1987). This administrative scheme need not be extensive and the Third Circuit has recognized that "[a]n employer . . . can establish an ERISA plan rather easily." *Gruber v. Hubbard Bert Karle Weber, Inc.*, 159 F.3d 780, 789 (3d Cir. 1998) (citing *Deibler v. United Food and Commercial Workers' Local Union 23*, 973 F.2d 206, 208-209 (3d Cir. 1992)). Ultimately, the "crucial factor" in determining whether a plan has been established is simply "whether the employer has expressed an intention to provide benefits on a regular and long-term basis." *Id.*

10. HSBC's "intention to provide benefits on a regular and long-term basis," *id.*, pursuant to the Severance Pay Plan's administrative scheme is evidenced in the first instance by its express terms, which state, *inter alia*, that it is a "welfare benefit plan for purposes of [ERISA]," (D.I. 8-1, Severance Plan Document, at 3), and that it "shall be governed and construed in accordance with ERISA" (*id.* at 9).

11. In addition, when assessing whether the plan or program involves the type of "minimal ongoing administrative scheme or practice" required for it to qualify as an ERISA plan, *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n.2 (1992), the Third Circuit has indicated that courts should consider whether "based on the surrounding circumstances" a reasonable person could ascertain: (1) the intended benefits, (2) a class of beneficiaries, (3) the source of financing, and (4) procedures for receiving benefits. *Deibler*, 973 F.2d at 208-209. As explained in HSBC's motion to dismiss Plaintiffs' complaint, these factors all weigh in favor of a finding that the Severance Pay Plan is in fact an ERISA plan. (D.I. 8, Brief in Support of HSBC Motion to Dismiss ("Mot. Dism. Br."), at 10-11). The Severance Pay Plan's intended benefits are identified in the plan document and the formula for calculating those benefits is described, the plan document contains eligibility conditions that identify its

beneficiaries, HSBC's general assets are identified as the source of financing, and the procedures for obtaining (or challenging the denial of) benefits are summarized in the section of the plan document related to plan administration. *See id.* (discussing the various relevant terms of the Severance Pay Plan's plan document).

12.     Notwithstanding the above, Plaintiffs contend that the Severance Pay Plan did not amount to an ongoing administrative scheme because it "contemplates one-time, lump sum payments" calculated "based on a simple formula that considers only the employee's length of employment." (Mot. Remand ¶ 18).  Accordingly, Plaintiffs argue the Severance Pay Plan is analogous to the severance programs at issue in *Girardot v. Chemours Co.*, 731 Fed. Appx. 108, 111 (3d Cir. 2018) and *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530, 1538 (3d Cir. 1992). Plaintiffs' focus on the manner and type of payment is short-sighted and their reliance on *Girardot* and *Angst* is misguided.

13.     As an initial matter, no court has held that the manner and type of payment is dispositive with respect to whether a severance program constitutes an ERISA plan. Although the Third Circuit did note in *Angst* and *Girardot* that the programs in those cases contemplated a single lump-sum payment, that was merely one consideration relevant to its analysis. The real problem with the plans at issue in *Angst* and *Girardot*, and what distinguishes those plans from the Severance Pay Plan, was that there were no actual stand-alone plans requiring ongoing administration. Instead, the payments at issue were offered to employees on an *ad hoc* or one-time basis. *See, e.g.*, *Srivastava v. Danaher Controls*, 2005 WL 1241972, *5 (D.N.J. May 24, 2005) (distinguishing *Angst* on the ground that it involved a "single, unique event that would not recur").  In *Angst*, for example, the program at issue was established to provide benefits to *a particular group* of union employees that were subject to *a particular* reduction-in-force. *Angst*,

969 F.2d at 1532-33. Similarly, in *Girardot*, the program at issue involved a one-time opportunity for certain employees to participate in a "voluntary separation program." *Girardot*, 731 Fed. Appx. at 110. Benefits under the program were only available to employees that submitted an election to participate within a two-week enrollment period. *Id.* Prior to the specific reductions-in-force at issue in *Angst* and *Girardot*, the defendants' severance "plans" did not exist—nor would the alleged plans continue after all employees affected by those events were paid. It was the limited, *ad hoc* nature of the "plans" at issue in *Girardot* and *Angst* that precluded a finding that the employer "inten[ded] to provide benefits on a regular and long-term basis," *Gruber*, 159 F.3d at 789, not the type or manner of payment available under the plans.

      B.      **Plaintiffs' Claims Fall Within the Scope of ERISA § 502(a).**

14. With respect to the second requirement that must be satisfied in order for state law claims to be completely preempted by ERISA, it is clear from the face of Plaintiffs' complaint that their claims fall squarely within the scope of ERISA § 502(a)(1)(B), which provides plan participants and beneficiaries a mechanism for obtaining benefits they believe they are owed under an ERISA plan.

15. Plaintiffs cannot credibly argue that they are not seeking benefits under the Severance Pay Plan. They concede that they were awarded 8 weeks of benefits under the plan and are requesting that the Court order HSBC to award them additional benefits of between 34 and 44 weeks. (D.I. 1-1, Complaint ("Compl.") ¶ 9, Prayer for Relief). The fact that they are seeking *additional* severance pay on top of that already provided under the Severance Pay Plan is evidence that their claims are, in reality, claims for benefits under the terms of the plan. Additionally, the formula for calculating severance is governed by the plan's terms and Plaintiffs are challenging HSBC's interpretation and application of that formula. (*Id.*). Finally, Plaintiffs

acknowledge that they previously filed administrative claims using the Severance Pay Plan's ERISA-mandated claims procedure in an effort to obtain the very same benefits at issue in this case. (*Id.* ¶¶ 26-27). The relationship between the relief they are seeking and the benefits they have already received, along with the relationship between the alleged misrepresentations at issue and the Severance Pay Plan's formula, demonstrates that regardless of how Plaintiffs style their claims, they are essentially ERISA § 502(a)(1)(B) claims for benefits under the plan. This conclusion is consistent with the holdings of multiple courts that have considered whether benefit claims premised on similar theories are subject to removal. *Franklin v. QHG of Gadsen, Inc.*, 127 F.3d 1024, 1028-29 (11th Cir. 1997) (finding state law claims that employer misrepresented benefits available under plan were completely preempted and subject to removal); *Warren v. Blue Cross & Blue Shield of South Carolina*, 129 F.3d 118, 1997 WL 701413, at **1-2 (4th Cir. 1997) (unpublished table decision) (finding claims nearly identical to those at issue in this case completely preempted and subject to removal); *Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989) (holding that a complaint alleging employer misrepresented terms of ERISA plan was completely preempted and subject to removal), *cert. denied*, 498 U.S. 1011 (1990); *Allocca v. Wachovia*, No. 05-0366, 2005 WL 2972845, at **3-4 (D.N.J. Nov. 4, 2005) (claim for benefits allegedly promised in side-agreement with employer that exceeded those promised by employer's ERISA plan were properly removed); *Sautter v. Comcast Cable Company*, No. 14-5729, 2015 WL 5821894, at **1-3 (D.N.J. Oct. 1, 2015) (finding that state law claims related to alleged misrepresentation of plan terms were completely preempted and surveying cases finding the same); *Miller v. U.S. Foodservice*, 323 F. Supp. 2d 665, 666 (D. Md. 2004) (collecting circuit court cases finding that "claims based on [] alleged oral promises regarding benefits are subject to ERISA preemption" and removable).

16. Notwithstanding the above, Plaintiffs attempt to distinguish their claims from those within the scope of ERISA § 502(a)(1)(B) by arguing that they "did not participate in the Plan, do not assert that HSBC breached the Plan, do not seek to enforce rights under the Plan, nor seek the determination of rights to future benefits under the plan." (Mot. Remand ¶ 16). This argument is both contrary to their own allegations and logically incoherent. As an initial matter, Plaintiffs were indisputably plan participants, which the plan defines as "each regular U.S. full-time or part-time employee of [HSBC] scheduled to work 20 or more hours per week." (D.I. 8-1, Plan Document, at 3). If Plaintiffs truly "did not participate in the Plan," they would not have received any benefits under the Plan at all. As for Plaintiffs' contention that they do not seek to enforce rights under the Plan, that argument is irreconcilable with the specific relief they are seeking in this case. Although Plaintiffs attempt to frame their claims as claims to enforce their management's promises or misrepresentations related to the Severance Pay Plan, the relief they are seeking (additional weeks of severance) is entirely dependent upon the existence of the Severance Pay Plan and the enforcement of its terms *as a whole*. Plaintiffs' alleged misrepresentations completely lack context removed from the plan's benefits formula—standing alone, they are unintelligible. As courts have recognized, state law claims are completely preempted if the court "would have to consult the terms of the plan to determine whether the benefits Plaintiffs seek are provided by the Plan." *See Sautter*, 2015 WL 5821894, at *3.

    C. **Plaintiffs' Claims Do Not Implicate an "Independent Legal Duty."**

17. The final question the Third Circuit has instructed courts to consider when analyzing whether a claim is completely preempted and subject to removal is whether it is based on an "independent legal duty implicated by the defendants' conduct." *Pascack*, 388 F.3d at 399-400. A legal duty is "independent" if "it is not based on an obligation under an ERISA plan

or if it would exist whether or not any ERISA plan existed." *N.J. Carpenters*, 760 F.3d at 303. *See also Gardner v. Heartland Indus. Partners, LP,* 715 F.3d 609, 614 (6th Cir. 2013) (holding that a state law claim is based on an independent legal duty if it "is not derived from, or conditioned upon, the terms of the [plan]" and it is not necessary "to interpret the plan to determine whether a duty exists"). As explained in HSBC's motion to dismiss, Plaintiffs' claims are not independent of, but directly related to, both ERISA and the Severance Pay Plan. (Mot. Dismiss, at 11-12). Plaintiffs' arguments to the contrary in their Motion for Remand are totally unavailing.

18. Plaintiffs contend that their claims are based on "an independent legal duty that is implicated by HSBC's conduct" because "HSBC made a series of promises and assertions in order to induce them to stay at HSBC and assist it in winding down their division." (Mot. Remand ¶ 16). However, Plaintiffs conveniently omit the obvious: that all of the alleged "promises and assertions" creating this purportedly "independent" legal duty were in fact *directly related* to the terms and administration of the Severance Pay Plan. Specifically, Plaintiffs allege that their management promised that "their severance pay under a certain Severance Pay Plan (the "Plan") would be determined by the[ir] Benefit Service Date and not their most recent rehire date." (D.I. 1-1, Compl. ¶ 1). Thus, the promises and assertions forming the basis for Plaintiffs' claims are not only related to the Severance Pay Plan, they are completely dependent upon the plan and must be read alongside its terms for them to have any meaning whatsoever.

19. The obvious and direct relationship between the alleged "promises and assertions" forming the basis for Plaintiffs' claims and the terms of the Severance Pay Plan squarely distinguishes this case from the two cases Plaintiffs rely on in support of removal—*Minker v. HSB Industrial risk Insurers*, No. 99-cv-494-SLR, 2000 WL 291542 (D. Del. 2000), and

*Gallagher v. E.I. Du Pont De Nemours*, No. 07-cv-47-JJF, 2007 WL 1794149 (D. Del. 2007). Although the courts in both *Minker* and *Gallagher* granted the plaintiffs' respective motions for remand, the claims at issue were fundamentally different from those at issue here.

20. In *Minker*, the plaintiff alleged that the defendants' negligent calculation and misrepresentation of his remaining vacation days caused him to retire earlier than he otherwise would have, and that as a result, he was unable to participate in a severance program adopted after he left the company. *Minker*, 2000 WL 291542, at **1-2. In *Gallagher*, the plaintiff brought state law contract claims to enforce an agreement to compensate him for work he performed on a pre-retirement project "in lieu of" participation in a career transition program. *Gallagher*, 2007 WL 1794149, at *1. In both cases the defendants removed the claims to federal court, but the courts remanded on the ground that the alleged promises and misrepresentations were not related to the ERISA plans at issue in the case. In *Minker*, the misrepresentations related to the plaintiffs' vacation benefits, not the terms of the severance plan or the plaintiff's right to participate in that plan; in *Gallagher*, the promises were related to and formed the basis for an entirely separate agreement entered into "in lieu of" the ERISA-governed career transition program that defendants cited in favor of removal. Here, by contrast, the plan forming the basis for Plaintiffs' claims, and to which the alleged misrepresentations relate, is the same ERISA-governed plan cited by HSBC in support of removal.

21. *Minker* and *Gallagher* are also distinguishable on the ground that neither plaintiff was actually a participant in the ERISA plans at issue in those cases. In *Minker*, the gravamen of the plaintiff's claim was that he was precluded from participating in the severance plan, allegedly because of his employer's negligent calculation of his remaining vacation days. *Minker*, 2000 WL 291542, at **2-3. In *Gallagher*, the plaintiff sought to enforce the terms of a separate

contract he entered into with his employer *in lieu of* his participation in the ERISA plan forming the basis for removal. *Gallagher*, 2007 WL 1794149, at *1. Because neither plaintiff was a participant or beneficiary of the plans at issue, they lacked standing to file suit under ERISA and their claims necessarily fell outside the scope of ERISA's civil enforcement scheme. *See Pascack*, 388 F.3d at 400 (holding that hospital's claims did not fall within scope of ERISA § 502(a) because it lacked standing to sue under that section). Plaintiffs, by contrast, were participants in the Severance Pay Plan, (*see supra* ¶ 16), and therefore at least have standing under ERISA.

## II. SUPPLEMENTAL JURISDICTION IS APPROPRIATE WITH RESPECT TO ANY STATE LAW CLAIMS THAT ARE *NOT* PREEMPTED BY ERISA

22. In the unlikely event that the Court determines that one or more of Plaintiffs' claims are not subject to the court's original jurisdiction, the Court should nevertheless retain supplemental jurisdiction over them.[2] When a district court has original jurisdiction over at least one claim in a case removed to federal court, it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, each of the nine counts in Plaintiffs' complaint are "part of the same case or controversy" for supplemental jurisdiction purposes because they are derived from the same factual predicate: specifically, that HSBC management misrepresented the manner in which Plaintiffs' severance benefits would be calculated under the Severance Pay Plan. Where

---

[2] The Court may grant HSBC's motion to dismiss Plaintiffs' claims as expressly preempted despite the fact that they are not completely preempted as long as the Court has supplemental jurisdiction over those claims. *See DeFelice v. Aetna U.S. Healthcare*, 346 F.3d 442, 453 (3d Cir. 2003) (noting that district court may rule on motion to dismiss claim as expressly preempted under ERISA § 514 if it decides to exercise supplemental jurisdiction over the claim despite the fact that the claim is not completely preempted by ERISA § 502(a)). In other words, complete preemption is not a prerequisite to dismissal on express preemption grounds.

claims name different defendants or raise different legal theories, but otherwise rely on the same or similar factual predicates, as Plaintiffs' claims do here, supplemental jurisdiction is appropriate. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 276 (3d Cir. 2001).

### III. PLAINTIFFS ARE NOT ENTITLED TO FEES OR COSTS

23. Plaintiffs' request for their attorneys' fees and cost should be denied. As the Supreme Court has held, fees and costs are recoverable under 28 U.S.C. § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). For the reasons explained above, removal is not only permitted on "complete preemption" grounds, it is consistent with and furthers Congress's express goal of ensuring that the regulation of employee benefit plans remains an exclusively federal concern. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).

WHEREFORE, for all of the foregoing reasons, defendant HSBC respectfully requests that the Court deny Plaintiffs' motion to remand this matter to the Delaware Superior Court and deny Plaintiffs their fees and costs associated with their motion to remand.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Samuel P. Myler
Nancy G. Ross
Megan S. Webster
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
smyler@mayerbrown.com
megan.webster@mayerbrown.com
nross@mayerbrown.com

*/s/ Ryan D. Stottmann*
Kenneth J. Nachbar (#2067)
Ryan D. Stottmann (#5237)
Sabrina M. Hendershot (#6286)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19801
(302) 658-9200
knachbar@mnat.com
rstottmann@mnat.com
shendershot@mnat.com
  *Attorneys for Defendant HSBC North America Holdings, Inc.*

November 15, 2019

13

## **CERTIFICATE OF SERVICE**

        I, Sabrina M. Hendershot, hereby certify that on November 15, 2019, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

                                    */s/ Sabrina M. Hendershot*
                                    Sabrina M. Hendershot (#6286)