**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| AMY L. SIMPLER, HANK SMITH, and DAVID C. DELPERCIO | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 19-1519-LPS |
| | ) | |
| v. | ) | |
| | ) | |
| HSBC NORTH AMERICA HOLDINGS, INC. a Delaware corporation, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS AMY L. SIMPLER, HANK SMITH, AND DAVID C. DELPERCIO
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**BERGER HARRIS LLP**

Brian M. Gottesman, Esq. (DE ID No. 4404)
David B. Anthony, Esq. (DE ID No. 5452)
Peter C. McGivney, Esq. (DE ID No. 5779)
1105 N. Market Street, Ste 1100
Wilmington, DE 19801
(302) 655-1140  telephone
(302) 655-1131  fax
bgottesman@bergerharris.com
danthony@bergerharris.com
pmcgivney@bergerharris.com

*Attorneys for Plaintiffs*

Dated: November 15, 2019

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES.................................................................................................ii, iii, iv

NATURE AND STAGE OF PROCEEDINGS ...............................................................................1

STATEMENT OF FACTS ...........................................................................................................2

ARGUMENT .............................................................................................................................7

I.      THE LEGAL STANDARD FAVORS DENYING THE MOTION ...................................7

II.     HSBC DOES NOT ESTABLISH THAT PLAINTIFFS' CLAIMS ARE
PREEMPTED ...........................................................................................................7

      A.     THE PLAN CONTEMPLATED A LUMP-SUM PAYMENT BASED ON
A SINGLE TRIGGERING EVENT AND THEREFORE IS NOT
COVERED BY ERISA.................................................................................7

      B.     PLAINTIFFS' CLAIMS DO NOT ARISE OUT OF THE PLAN AND
THEREFORE ARE NOT PREEMPTED BY ERISA...........................................10

CONCLUSION.........................................................................................................................11

# **TABLE OF AUTHORITIES**

**Case**                                                                                                               **Page**

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S.  544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) .................................. 7

*Fort Halifax Packing Co., Inc. v. Coyne*,
    482 U.S. 1 (1987) ........................................................................................... 8, 9

*Girardot v. Chemours Co.*,
    731 F. App'x 108 (3d Cir. 2018) ....................................................................... 9

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997) ........................................................................... 7

*Minker v. HSB Industrial Risk Insurers*,
    2000 WL 291542 (D. Del. Mar. 14, 2000) ..................................................... 10

*Pane v. RCA Corp.*,
    667 F. Supp. 168 (D.N.J. Aug. 11, 1987) ........................................................ 8

*Pane v. RCA Corp.*,
    868 F.2d 631 (3d Cir. 1989) .......................................................................... 8, 9

*Shaver v. Siemens Corp.*,
    670 F.3d 462 (3d Cir. 2012) ............................................................................. 9

*Smith v. Forester*,
    2013 WL 135959 (D. Del. Mar. 29, 2013) ...................................................... 7

*Spruill v. Gillis*,
    372 F.3d 218 (3d Cir. 2004) ............................................................................. 7

*Victaulic Co. v. Tieman*,
    499 F.3d 227 (3d Cir. 2007) ............................................................................. 7

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
    522 F.3d 315 (3d Cir. 2008) ............................................................................. 7

# STATUTES

28 U.S.C. § 1331 ................................................................................................................... 1

29 U.S.C. § 1132(e)(1) ......................................................................................................... 1

28 U.S.C. § 1367 ................................................................................................................... 1

## NATURE AND STAGE OF PROCEEDINGS

Plaintiffs Amy L. Simpler, Hank Smith, and David C. DelPercio (collectively, the "Plaintiffs") initiated this matter by filing a complaint against defendant HSBC North America Holdings, Inc. ("Defendant" or "HSBC") in the Superior Court of the State of Delaware on June 4, 2019.  [D.I. 1 at Ex. A; Compl. at ¶ 1].  Plaintiffs' complaint alleges three causes of action against HSBC.  Counts I-III assert claims for promissory estoppel.  Compl. at ¶¶ 29-47.  Counts IV-VI assert claims for unjust enrichment.  *Id*. at ¶¶ 48-68.  Counts VII-IX assert claims for quantum meruit.  *Id*. at ¶¶ 69-80.

HSBC removed the Complaint to this Court on August 13, 2019.  HSBC contended that this Court has jurisdiction over the Complaint under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. [D.I. 1 at ¶ 4].  Defendant further contends that this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over any purported state or common law claims that are not preempted by and subject to the Employment Retirement Income Security Act of 1974 ("ERISA").  *Id*.

On September 20, 2019, Plaintiffs filed a Motion for Remand for Lack of Subject Matter Jurisdiction.  [D.I. 6].

Also on September 20, 2019, HSBC filed a Motion to Dismiss under Rule 12(b)(6).  [D.I. 7, 8].

This is Plaintiffs' Answering Brief in opposition to HSBC's Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiffs are all former employees of HSBC and worked in its Wilmington, Delaware office.  [D.I. 1 at Ex. A; Compl. at ¶ 1].  In early 2017, HSBC announced that it would be closing the division that the Plaintiffs worked in and that employees in that division including Plaintiffs would be laid off.  Plaintiffs began working for HSBC in the 1990's.  Compl. at ¶ 11.  For a 2-3 year period, Plaintiffs worked for Capital One after HSBC sold the division.  While Plaintiffs were at Capital One, Capital One sold the division back to HSBC and Plaintiffs rejoined HSBC as employees.  *Id*. at ¶¶ 7, 11, 17.  Because the Plaintiffs began working for HSBC in the 1990's, their Benefit Service Date was from the 1990's, but their most recent hire date was either in late 2013 or early 2014 when they returned to HSBC from Capital One.  *Id*. at ¶¶ 11, 12, 14.  Under the terms of HSBC's Severance Pay Plan (the "Plan"), severance benefits are paid out to employees based on their most recent hire date.  *Id*. at ¶ 1.

HSBC's executive management, Sanjay N. Coutinho, his bosses, and Ana Orvananos, induced the Former Employees to stay at the Company and forego other opportunities in order to help the Company close their divisions.  Compl. at ¶ 8.  Mr. Coutinho managed the Former Employees both before and after he was promoted to Chief Operating Officer in October 2017.  *Id*. at ¶ 10.  On April 10, 2017, Ms. Simpler and Mr. DelPercio brought to Mr. Coutinho's attention that they began working for HSBC in the 1990's, but that they briefly worked at Capital One when it was bought by HSBC's credit card division.  *Id*. at ¶ 11.  Plaintiffs' decision to go to Capital One was not one of their choosing, but rather was their only ability to keep their jobs after HSBC sold the division.

During the April 2017 meeting, Ms. Simpler and Mr. DelPercio discussed with Mr. Coutinho whether their most recent hire date of January 2014 would be used to calculate their severance or whether HSBC would use the Benefit Service Date.  Compl. at ¶ 12.  Although Mr.

Coutinho did not say which would be used, he implied that the Benefit Service Date would be considered.  He further stated that he would meet with each employee and that he recognized that their situation was unique because they briefly worked at Capital One.  *Id*.  On May 23, 2017, Mr. DelPercio, Ms. Simpler and Mr. Coutinho met to discuss what their severance pay would be if they agreed to stay with HSBC until their division closed in 2018.  *Id*. at ¶ 13.  Mr. Coutinho represented that HSBC would use their Benefit Service Date so they could get the maximum severance of 52 weeks for Mr. DelPercio, 44 weeks for Mr. Smith and 42 weeks for Ms. Simpler.  Mr. Coutinho then promised that he would contact Human Resources to set things up.  *Id*.

The next day, Ms. Orvananos, a Vice President and Human Resources Manager, sent an email to Ms. Simpler asking her to confirm that her most recent hire date was September 23, 2013. *Id*. at ¶ 14. Ms. Simpler confirmed the date.  Ms. Orvananos then responded that she sent some information to Mr. Coutinho and to follow up with him.  Ms. Simpler emailed Mr. Coutinho expressing concern and he told her to "please relax" and indicated that she had nothing to worry about because the "closure activities don't trigger until 2018." *Id*.

A few days later, Mr. Coutinho and Mr. DelPercio had a discussion about his work history with HSBC.  Compl. at ¶ 15.  Mr. Coutinho did not tell Mr. DelPercio that he was obligated to follow the Plan or that the Plaintiffs' prior service to HSBC would not be recognized.  Instead, Mr. Coutinho asked Mr. DelPercio to send him an email outlining his work history, which he completed on May 30, 2017.  In that same email, Mr. DelPercio asked Mr. Coutinho what impact his work history had on his severance.  Mr. Coutinho did not respond.  *Id*.  On May 31, 2017, Mr. Coutinho and Ms. Simpler again discussed her severance.  Compl. at ¶ 16.  Mr. Coutinho discussed the information provided to him by Ms. Orvananos, but failed to tell Ms. Simpler that her Benefit

3

Service Date would not be considered and instead, asked her to get back to him with additional information.  *Id*.

Then, on June 20, 2017, Mr. Coutinho and Mr. DelPercio had a telephone conference to discuss the amount of severance Mr. DelPercio would receive if he agreed to stay at HSBC until his division closed.  Compl. at ¶ 17.  During that call, Mr. Coutinho told Mr. DelPercio that he spoke with multiple other people who told him that the 2-3 years he was at Capital One might be discounted for purposes of calculating his time in service, but that Mr. DelPercio would still qualify for the maximum 52 weeks of severance because of his Benefit Service Date.  Mr. Coutinho further represented that HSBC would not use Mr. DelPercio's rehire date for calculating service time and that the math would not harm him.  *Id*.  Mr. DelPercio asked if he could get something formal documenting the exact amount of his severance and Mr. Coutinho said that he could not give him a computation in writing because HSBC did not at that time know when his division would be closed.  *Id*. at ¶ 18.

On August 31, 2017, Ms. Simpler emailed Mr. Coutinho asking whether HSBC had made any final determinations regarding how much severance she would receive because she was "trying to determine how to proceed with planning my next steps."  Compl. at ¶ 19.  Mr. Coutinho suggested that they discuss the issue in person, but never told Ms. Simpler that her 2014 rehire date would be used to calculate her severance if she agreed to stay at HSBC until her division closed.  *Id*.  Less than two months later, on November 15, 2017, Mr. Coutinho met with Ms. Simpler advising her that he spoke with his "bosses" and they all agreed that HSBC would do the "right thing" and use the Benefit Service Date.  *Id*. at ¶ 20.  Mr. Coutinho concluded the conversation by telling Ms. Simpler not to look for a new job and to stay with HSBC until her division closed.  *Id*.

On January 9, 2018, HSBC held a team meeting with the Plaintiffs and others in their group to officially announce that their employment would be terminated in April. Compl. at ¶ 21. After the meeting, Mr. Coutinho met with Mr. Smith, Ms. Simpler and Mr. DelPercio and told the Former Employees that as Chief Operating Officer he would be able to ensure that the "right thing is done." *Id*. at ¶ 22. Mr. Coutinho said that he shared their situation with John Hackett and John Panagopoulos, his bosses, and they all agreed that the Benefit Service Date would be used to calculate their severance. *Id*. Later that day, Mr. Coutinho emailed Ms. Orvananos, stating that he needed her help with Mr. DelPercio's case because he was "transferred to CapOne when credit card operations was sold." *Id*. at ¶ 23. Mr. Coutinho wrote "I'm assuming we will use his start date as Nov. 1991 for his severance due in April. Please review and confirm." *Id*. Ms. Orvananos then emailed Mr. DelPercio and told him to "open an HR case." *Id*. Ms. Orvananos did not tell Mr. DelPercio that his November 1991 date would not be used to calculate his severance even though she had just been told that Mr. DelPercio went, with many others, to Capital One. *Id*.

Thereafter, each of the Plaintiffs opened an HR case. On January 11, 2018, Mr. Smith and Ms. Orvananos exchanged emails. *Id*. at ¶ 24. Ms. Orvananos told Mr. Smith that she spoke with "employee relations" and they were "flagging this case." *Id*. Ms. Orvananos assured Mr. Smith that if there was a "misunderstanding, we are still on time to rectify the date, so don't worry." *Id*. One more time, Ms. Orvananos led Mr. Smith to believe that his Benefit Service Date would be used to calculate his severance. Plaintiffs were told for the first time on February 26, 2018, that their Benefit Service Date would not be considered in light of their unique situation. Compl. at ¶ 25. That day, Mr. Smith spoke with Bobby Seymour and Mr. Seymour said that Mr. Coutinho did not have authority to tell the Former Employees that their severance would be based on their Benefit Service Date. *Id*. As a result of HSBC's decision to use Plaintiffs' most recent hire date

5

instead of their Benefit Service Date as they had been promised, Plaintiffs would have received 8 weeks of severance pay rather than 52 weeks for Mr. DelPercio, 44 weeks for Mr. Smith, and 42 weeks for Ms. Simpler.  *Id*. at ¶ 9.  Plaintiffs filed an internal administrative appeal with HSBC but were unable to resolve their dispute.  *Id*. at ¶¶ 26, 27.

## ARGUMENT

### I.      The Legal Standard Favors Denying The Motion.

In evaluating a 12(b)(6) motion to dismiss, this Court is required "to accept as true all material allegations of the complaint." *Smith v. Forester*, 2013 WL 135959, at \*2 (D. Del. Mar. 29, 2013) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)).  Whether the plaintiff will prevail is not a factor in determining a motion to dismiss, but rather whether the plaintiff can offer evidence to support their claims.  *Id.  See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

For a complaint to survive a motion to dismiss, "a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are even true (even if doubtful in fact).'" *Smith*, 2013 WL 135959, at \*2 (citing *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.  544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  The facially plausible claim must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct that alleged." *Id.  See also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009).  "At bottom, '[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element' of a plaintiff's claim." *Id.* (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008)).

### II.      HSBC Does Not Establish That Plaintiffs' Claims Are Preempted.

### A.      The Plan contemplated a lump-sum payment based on a single triggering event and therefore is not covered by ERISA.

HSBC's Opening Brief relies on platitudes and general propositions of ERISA law.  HSBC does not, however, address the critical issue raised by their motion, which is, whether the Plan constitutes an ongoing administrative scheme such that it is exclusively governed by ERISA.  In

fact, HSBC's Opening Brief cites to only one case that specifically addresses an employee severance plan similar to the Plan.  *See* Opening Brief at p. 5 (citing *Pane v. RCA Corp.*, 868 F.2d 631 (3d Cir. 1989)).  But, *Pane* is easily distinguishable from Plaintiffs' case because the severance plan at issue in *Pane*, unlike HSBC's Plan, did not involve a lump-sum payment triggered by a single event.

In *Pane*, unlike here, the plaintiff alleged the severance plan at issue was an employee benefit plan under ERISA.  868 F.2d at 634.  The District Court agreed that the severance plan at issue was an employee benefit plan under ERISA because it only applied to certain employees and "only if a 'triggering event' occurs, such as termination of an employee for reasons other than for cause.  Thus, the circumstances of each employee's termination must be analyzed in light of these criteria, and an ongoing administrative system constituting an ERISA plan exists."  *Pane v. RCA Corp.*, 667 F. Supp. 168, 170-71 (D.N.J. Aug. 11, 1987).  The Third Circuit affirmed because RCA's plan required the employer to identify eligible employees and an ongoing administrative scheme was required to implement it.  *Pane*, 868 F.2d at 635.  The Third Circuit noted, however, that if the plan had contemplated "a lump sum payment, triggered by a single event" and it "require[ed] no administrative scheme" it would not be covered by ERISA.  *Id*. (*citing Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1 (1987)).

Here, HSBC does not even attempt to argue that the Plan required an ongoing administrative scheme, nor could it credibly do so.  The HSBC-North America (U.S.) Severance Pay Plan that is attached as Exhibit A to the Opening Brief pronounces: "Severance pay will be paid out in a lump sum."  Opening Br. at Exhibit A at § VI.[1]  It also makes clear that Plan is

---

[1]  Plaintiffs note that the Exhibit A attached to HSBC's Opening Brief is different from the Summary Plan Description which Plaintiffs attached to their Motion to Remand and which

applicable to all U.S. full-time or part-time employees who work more than 20 hours per week, so long as the employee is not subject to an employment agreement or collective bargaining agreement. *Id*. at § III. This is limited only by whether the employee was terminated for certain enumerated reasons. *Id*. at § IV. Accordingly, unlike *Pane*, eligibility under the Plan is not based on subjective criteria requiring approval of board of directors. 868 F.2d at 634-35. *See also Shaver v. Siemes Corp*., 670 F.3d 462, 477 (3d Cir. 2012) ("Factors relevant to determining whether an employer's undertakings have created an ERISA plan also include whether the undertaking requires managerial discretion, that is, whether the undertaking could not be fulfilled without ongoing, particularized, administrative, analysis of each case and whether a reasonable employee would perceive an ongoing commitment by the employer to provide some employee benefits.") (internal quotations omitted).

The law governing whether employee severance plans are covered by ERISA is settled. "The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." *Fort Halifax Packing Co., Inc*, 482 U.S. at 12. "The crucial factor in determining whether a program constitutes an ERISA plan is whether the employer expresses the intention to provide benefits on a regular and long-term basis." *Girardot v. Chemours Co*., 731 F. App'x 108, 111 (3d Cir. 2018) (quoting *Shaver v. Siemens Corp*., 670 F.3d 462, 478 (3d Cir. 2012)).

Here, HSBC was not required to exercise "managerial discretion" in determining whether employees were eligible for severance under the Plan. There was no "ongoing" or "particularized" analysis for each employee. Rather, employees that were full-time that had not been terminated

---

Plaintiffs referenced in their Complaint. But both documents make clear that severance payments were to be paid in a lump-sum.

9

for specified reasons were entitled to one-time, lump sum payments.  As such, the Plan does not fall within the scope of ERISA.  HSBC's motion, therefore, should be denied.

**B.      Plaintiffs' claims do not arise out of the Plan and therefore are not preempted by ERISA.**

HSBC's motion should also be denied because Plaintiffs do not assert claims under the Plan.  Not all claims related to employee benefits are subject to ERISA.  Rather, employees' claims related to benefits are only preempted by ERISA if the claims are (i) to recover benefits due under the terms of a plan, (ii) to enforce rights under the terms of a plan, or (iii) to clarify rights to future benefits under the terms of a plan.  *Minker v. HSB Industrial Risk Insurers*, 2000 WL 291542, at *3 (D. Del. Mar. 14, 2000) (quotations omitted).  Here, Plaintiffs claims are none of those things.

As detailed in the Complaint, on multiple occasions HSBC's management, acting with apparent authority, led Plaintiffs to believe that they would be paid severance based on their Benefit Service Date and not their hire date.  As a result of the promises and representations made to them by HSBC's managers, Plaintiffs agreed to stay at HSBC for nearly a year after it was announced that their division would be closed.  Plaintiffs seek to enforce those promises and recover the amount due to them for saying in a dead-end job for months after they could have left and began new careers somewhere else.  Plaintiffs' claims, therefore, are not to recover benefits that due under the Plan, but instead benefits that are due based on HSBC's representations.  Likewise, Plaintiffs' claims do not seek to enforce rights under the Plan or to clarify rights to future benefits under the Plan.  As such, Plaintiffs' state-law claims are not preempted by ERISA.

## <u>CONCLUSION</u>

HSBC's Motion to Dismiss should be denied.  The Plan is not a covered by ERISA because severance payments were to be made in a lump-sum based on objective criteria that did not require employer discretion or the use of an administrative scheme.  Even if the Plan were covered by ERISA, Plaintiffs' claims are not preempted.  Plaintiffs do not seek to recover benefits due under the Plan, do not seek to enforce rights under the Plan, and do not seek to clarify their rights under the Plan.  Because Plaintiffs' claims are not subject to ERISA or preempted by ERISA, and for the reasons stated in the Plaintiffs' Motion to Remand, this court does not have subject matter jurisdiction and the Complaint should be Remanded to the Delaware Superior Court.

**BERGER HARRIS LLP**

By: _/s/  David B. Anthony_
    Brian M. Gottesman, Esq. (DE ID No. 4404)
    David B. Anthony, Esq. (DE ID No. 5452)
    Peter C. McGivney, Esq. (DE ID No. 5779)
    1105 N. Market Street, Ste 1100
    Wilmington, DE 19801
    (302) 655-1140  telephone
    (302) 655-1131  fax
    bgottesman@bergerharris.com
    danthony@bergerharris.com
    pmcgivney@bergerharris.com

    *Attorneys for Plaintiffs*

Dated: November 15, 2019